**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ELY COOPER, | : | |
| | : | |
| Plaintiff, | : | Civil No. 12-961 (FSH) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| JUDY WRIGHT, M.D., et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES**:

    ELY COOPER, Plaintiff pro se
    # 000193
    East Jersey State Prison - Special Treatment Unit
    8 Production Way CN-905
    Avenel, New Jersey 07001

**HOCHBERG**, District Judge

    Plaintiff, Ely Cooper, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., confined at the Special Treatment Unit at the East Jersey State Prison ("EJSP-STU"), at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a)(1998) and order the Clerk of the Court to file the Complaint.

    At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), to determine whether the pleading

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action should be dismissed with prejudice.

## I.   BACKGROUND

Plaintiff, Ely Cooper ("Plaintiff" or "Cooper"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants at the EJSP-STU: Judy Wright, M.D.; Edith Feldman, RN; Steve Johnson, Assistant Superintendent; Merril Main, Clinical Director; Brian Friedman, Director of the Psychology Department; Shantay Adams, Assistant Unit Director; and Carole Lester, Clinical Director.  (Complaint, Caption, ¶¶ 4b-h).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Plaintiff alleges that on or about February 1, 2012, he went to the Annex Facility Hospital to see defendant, Dr. Wright about Plaintiff's worsening medical condition.  Cooper complained that since his first operation on his left eye, both his eyes were "worsening."  Dr. Wright had defendant Nurse Feldman schedule Cooper for another operation, "which caused [his] eyes to feel like they have rocks in them."  (Compl., ¶ 6, Statement of Claims).  Cooper also complained to Dr. Wright that he is feeling

weak and his "body is decaying from all of these operations." (Id.).

On February 2, 2012, another resident had to help Plaintiff in a wheelchair because his legs were swelling. Cooper states that he is diabetic. He also alleges that Dr. Wright told him that he had a weak/unstable heart that required another "operation."[1] Cooper complained that all of the surgeries made him feel like a "lab rat." (Id.).

Cooper alleges that he asked for his medical records so he could obtain a second opinion but Dr. Wright refused to provide them. Cooper also alleges that Dr. Wright told him that due to his heart problem, he would have to stop working in the kitchen. (Id.).

Cooper seeks injunctive relief, namely, that he be transferred to a medical facility that is "capable of administering proper medical care for his worsening heart condition and [his] blindness brought on by diabetes and botched operations at the hands of the defendants." (Compl., ¶ 7). He also asks that the defendants be removed from the EJSP-STU and that an investigation of the medical department be conducted. (Id). Cooper further seeks an unspecified amount of compensatory damages. (Id.).

---

[1] Cooper conveniently omits any information as to the surgeries or operations that he underwent or that have been recommended by the doctors.

3

On or about February 24, 2012, Plaintiff submitted an addendum to his Complaint. (Docket entry no. 2). He alleges that, on February 14, 2012, he was called to see another doctor, Dr. D. Stefano, who informed Cooper that the medication he had been prescribed had caused blood clots and the swelling in Plaintiff's legs. Accordingly, Plaintiff was prescribed a different medication. (Id.).

On or about March 2, 2012, Plaintiff submitted a second addendum to his Complaint. (Docket entry no. 3). Cooper attached a letter, dated February 27, 2012, which he received on March 1, 2012, from the University of Medicine and Dentistry New Jersey ("UMDNJ"), that was in response to Cooper's inquiries for "laser surgery and appropriate treatment for a cardiac condition." (Docket entry no. 3 at pg. 5). The UMDNJ letter informed Plaintiff, as follows:

> According to your medical records, you have seen the cardiologist on several occasions with the most recent being on 2/14/12. He found the following:
>
> IMPRESSION:
> 1. Coronary artery disease status post stent placement.
> 2. Ankle edema probably secondary to amlodipine.
> 3. Arterial hypertension.
>
> As a result, he recommended that the amlodipine be discontinued and your coreg prescription was increased with a follow up appointment in 1 month.
>
> In addition, you have also been followed by opthamology both as an outpatient and seen in the UMDNJ opthamology clinic on numerous occasions in order to monitor and treat your diabetic retinopathy. Most recently, you had laser surgery to your left eye at UMDNJ opthamology clinic on 2/16/12 and are scheduled to return for another treatment in the next 2 weeks. I trust this addresses your concerns.

4

(Docket entry no. 3 at pg. 5).

On March 18, 2012, Cooper submitted yet another addendum to his Complaint. (Docket entry no. 4). Cooper relates an incident at EJSP-STU where a resident had a heart attack but died en route to the hospital, allegedly due to having to wait 20 minutes to be moved 200 yards from the EJSP-STU to the Annex Facility, and for corrections officers to allow the ambulance to pass two locked gates on the EJSP grounds. (Id.).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis. Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B). This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

5

in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true,

6

violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[2]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

7

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court

---

[3] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

### A.   Denial of Medical Care Claim

It would appear from the allegations asserted by Plaintiff in this action that he is alleging deliberate indifference to his medical needs, or a denial of proper medical care and treatment in violation of his constitutional rights. Although Cooper asserts his claim under the Eighth Amendment, he is not a convicted prisoner serving his sentence, so his denial of medical care claim is more akin to that of a pretrial detainee, which is appropriately evaluated under the Fourteenth Amendment. See City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000);

10

Reynolds v. Wagner, 128 F.3d 166, 173-74 (3d Cir. 1997)("[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner"). See also Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; *i.e.* whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt....") (citing Hubbard, 399 F.3d at 158). In Hubbard, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of non-convicted persons. 399 F.3d at 165-67.

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 ... (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 .... The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007).

11

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro,

834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would

be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, there does not appear to be any denial of medical care.  Cooper complains that the laser surgeries for his eyes has made him feel weaker, but he attaches a letter that confirms he has requested these treatments for his diabetic retinopathy.  The letter from UMDNJ outlines the treatment Plaintiff has received, is expected to receive, and the treatment that is recommended.  Further, the letter confirms complications from a prescription,

14

which was discontinued accordingly.  Thus, at most, Plaintiff appears to be dissatisfied with his treatment, or at best, he alleges medical negligence, which is not cognizable in a § 1983 action.  As stated above, even if Dr. Wright and the medical staff at EJSP-STU initially prescribed medication for treatment of Cooper's diabetes and other medical conditions, and rendered a course of treatment that was later shown to be incorrect, such conduct does not rise to the level of deliberate indifference, but instead is medical malpractice that is not a constitutional violation.  See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110 ("mere disagreements over medical judgment do not state Eighth Amendment claims").

   Moreover, Plaintiff's allegations do not show that defendants' actions in providing the medical care that they did was arbitrary or purposeless, or excessive, with a purpose to punish or retaliate against Plaintiff.  Therefore, because the allegations are not sufficient to support an Eighth or Fourteenth Amendment denial of medical care claim, and plainly fail to show deliberate indifference on the part of the defendants, the Complaint will be dismissed with prejudice, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim.

B.   Non-Medical Defendants

   Cooper also appears to allege that defendants Main, Friedman, Adams and Lester have forced Plaintiff to participate

15

in group therapy knowing that Plaintiff is taking medication which causes his "tiredness" and "weakness" due to a heart condition.  He also complains that he is threatened with "MAP" status if he does not attend group.  (Complaint at ¶¶4 e-h). This Court takes judicial notice that Cooper presently has another civil action pending before this Court against most of these same defendants.  See Cooper v. Johnson, et al., Civil No. 10-5245 (FSH).  In that action, Cooper asserts that the defendants have denied him group and therapy treatment.  Clearly, the allegations in the present action are inconsistent with his claim in the earlier, pending action.  Accordingly, the claims asserted herein will be dismissed.  To the extent that Plaintiff's allegations are related to his earlier action, Plaintiff may seek, if he desires to do so, to amend his Complaint in Civil No. 10-5245 (FSH) accordingly.

## V.    CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.  An appropriate order follows.

s/ Faith S. Hochberg
FAITH S. HOCHBERG
United States District Judge

Dated: September 6, 2012